John C. HARRIS *v.* STATE of Arkansas

CR 78-76                                        572 S.W. 2d 389

Opinion delivered October 16, 1978
(In Banc)
[Rehearing denied November 20, 1978.]

*William C. McArthur,* for appellant.

*Bill Clinton,* Atty. Gen., by: *Joyce Williams Warren,* Asst. Atty. Gen., for appellee.

DARRELL HICKMAN, Justice. John C. Harris was convicted in the Pulaski County Circuit Court of theft by receiving and fined $300.00.

On appeal he alleges three errors, only one of which has merit: we agree that the defendant's motion to suppress certain evidence obtained by the use of a defective search warrant should have been granted.

The trial court noted that the search warrant was defective or insufficient in several respects: the judicial officer failed to make a finding that would have authorized a search and seizure day or night [Rules of Crim. Proc., Rule 13.2(c) (1976)]; a receipt was not delivered to Harris describing and listing the things seized from his residence [Rules of Crim. Proc., Rule 13.3(d) (1976)]; and, the return was not executed as required by Rules of Crim. Proc., Rule 13.4 (1976).

The trial judge commented that there appeared to be ". . . pretty much of a total disregard for the rules. . . . " but, finding no prejudice, overruled the motion to suppress.

We find on review that the cumulative errors, omissions, and deficiencies in this search warrant and affidavit require us to conclude that the warrant must fail as legally insufficient.

There were several flagrant deficiencies in the warrant and affidavit. First, the warrant, issued by the Sherwood

Municipal Court, did not specify the place to be searched with particularity required by the law. Rules of Crim. Proc., Rule 13.1 (b) (1976). It only stated a residence located at 10002 Republic Lane was to be searched, with no mention of the city or other place where this residence was located. As it turns out, the address is identical to one occupied by Harris in southwest Little Rock. It conceivably could have been elsewhere in Pulaski County. Such an error alone might not require reversal because we are quite tolerant of discrepancies regarding the description of property. *Gatlin v. State*, 262 Ark. 485, 559 S.W. 2d 12 (1977).

Second, the judicial officer issuing the search warrant made no finding that the warrant could be served day or night. (Otherwise, a warrant must be served between the hours of six a.m. and eight p.m.) Yet there was evidence that the officer arrived at Harris' residence before six a.m. The first State's witness said the officer arrived about five a.m. Later witnesses for the State swore it was after six a.m. Good cause must exist and be found by the issuing judicial officer to exist to authorize entry into a citizen's privacy in the night time. This is a safeguard justified by centuries of abuse.

Third, Harris was not given a receipt for the items seized as required by the Rules of Crim. Proc., Rule 13.3(d) (1976). In this trial, the authenticity of the stolen items became critical. Harris was convicted of possession of a stolen television set. The officers testified that a television set was taken from Harris' home pursuant to the search warrant, tagged and stored in the sheriff's office, and later delivered to its owner. Since Harris was not given a receipt for a television set nor for other innumerable items taken from his home as required by the Rules, the credibility of the State's case became an issue. If the officers had followed the Rules, it should not have been an issue.

It seems that the affidavit used here to obtain the search warrant of Harris' residence was also used as a basis for several other warrants. The officers conducted several searches that same night and confiscated a considerable amount of goods from other individuals, and at the same time collected all these items and delivered them to the sheriff's office. With these numerous items, taken from various places, it

became critical to the case for the State for it to be able to say with confidence that Harris, in fact, had possessed the alleged stolen goods. (In fact, Harris had to obtain two court orders from the trial judge ordering the sheriff's officers to return to him numerous items seized at the same time from his home. A receipt would have alleviated any problem in this regard.)

Fourth, there was an invalid return of the search warrant, a discrepancy alone which is ordinarily not critical. *Shackleford* v. *State*, 261 Ark. 721, 551 S.W. 2d 205 (1977). It is just one more deficiency to be considered when examining the warrant's credibility and legality as a whole.

And, finally, the affidavit was admittedly erroneous in several regards. The affidavit stated that four separate confidential informants, who had proved to be reliable in the past, had informed the sheriff's office that Harris had illegal goods. In fact, only two of these informants were able to say under oath that they had any dealings at all with Harris. The State conceded this error. As it turns out, these four informants were all working together burglarizing places and some of their efforts, praised in the affidavit, were minimal. One of the informants, who was alleged to have provided information leading to the arrest of a malefactor, was actually referring to his own arrest! One of the State's witnesses eventually conceded that the affidavit used to obtain the search warrant was incorrect because it stated that four informants had supplied information regarding illegal activity of Harris whereas, in fact, essentially only one informant had provided information.

In summary, there were too many omissions, errors and deficiencies in this warrant and related to this search to give us any confidence in its correctness or regularity.

Our rules governing searches do not exist merely to provide technicalities for the sake of form — they exist so that people can rest assured that when an officer produces a search warrant it is with good cause, properly executed, approved by a judicial officer and not an improper attempt to invade the protective sanctity of one's person or home.

When we adopted the Rules of Criminal Procedure it

was our hope and desire that we would provide for those interested and those concerned, a concise, correct set of rules governing searches, seizures, and, in general set forth the procedural aspects of criminal law. The Rules should be common knowledge to law enforcement officers and judicial officers who have the duty and responsibility to authorize searches. The forms and procedure are quite elementary, the adherence to which will save everyone concerned a good deal of time, money, and, sometimes, anguish.

It might be that alone the discrepancies in this case would not amount to prejudicial error. However, when considered together, we much conclude that the almost total disregard of the Rules cannot be ignored. What it all comes down to is where do we draw the line? We draw the line here. The State has not demonstrated that a reasonably good faith effort was made to comply with the Rules. The evidence is, in fact, to the contrary.

We find in this case that such an accumulation of errors requires us to reverse the judgment of the trial court and remand the case for a new trial with the direction that the goods obtained through the use of the search warrant in question may not be used against Harris on similar charges.

Reversed and remanded.

HARRIS, C.J., and FOGLEMAN, J., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. The rule governing motions to suppress evidence is Criminal Procedure Rule 16.2. Subsection (e) is applicable here. It provides:

> Determination. A motion to suppress evidence shall be granted only if the court finds that the violation upon which it is based was substantial, or if otherwise required by the Constitution of the United States or of this state. In determining whether a violation is substantial the court shall consider all the circumstances, including:
> (i) the importance of the particular interest violated;
> (ii) the extent of deviation from lawful conduct;
> (iii) the extent to which the violation was willful;
> (iv) the extent to which privacy was invaded;

(v) the extent to which exclusion will tend to prevent violations of these rules;

(vi) whether, but for the violation, the things seized would have been discovered; and

(vii) the extent to which the violation prejudiced the moving party's ability to support his motion, or to defend himself in the proceedings in which the things seized are sought to be offered in evidence against him.

The trial court found no prejudice. No regard whatever is given to that finding by the majority.

I cannot see how we can say the court was wrong. The address could not have been misleading. The Chief Deputy Tax Assessor of Pulaski County testified that there is only one Republic Lane in the county. The first of the violations said to be cumulative is a violation only when viewed hypertechnically. It certainly was not prejudicial.

The statement of one witness that the officers arrived at the address at 5:00 a.m. is apparently taken by the majority to constitute an overwhelming preponderance of the evidence. Phillip Thomas, one of those arrested and charged with the thefts that were connected with the charges against Harris, said that he accompanied the officers on the search and that they went to the Harris house between 6:30 and 7:00 a.m. Deputy Sheriff Stan Chase was positive that the search was after 6:00 a.m. He placed it in the same range of time that Thomas did. Sgt. Rocky Woods also said the search was initiated between 6:30 and 7:00 a.m. Deputy Sheriff Bill Watt put the time of arrival at the house as between 6:45 and 7:00 a.m. Appellant tried to say that the search started at 5:00 a.m., but he said that he looked at the clock when the officers were finished and he was run out of the bedroom and it was 6:20 a.m. He said that they had been there carrying stuff out for 15 or 20 minutes. Only by finding the first witness to be the only credible one can it be said that the rule against searches before 6:00 a.m. was violated. That is not a matter for this court to determine. The second error, said to be one of the cumulative ones, contributed nothing to the alleged centuries of abuse of which the majority claims some special knowledge. It was not an error at all.

A receipt should have been given to Harris. But Deputy Sheriff Bill Watt testified that he made an inventory of the property taken at the Harris house and that he tagged the property.

Another so-called error relates to the return. Neither the affidavit, search warrant nor the return are abstracted. Apparently, the majority relies upon the statement in the state's brief that the return is not strictly in line with the statutory language. How was it not strictly in line? Is strict compliance with every guideline for issuance and execution of search warrants to be required? The quoted rule indicates quite the contrary, i.e., that substantial compliance is sufficient and that evidence is not to be suppressed because a hypercritical retrospective review from the judicial bench sees things that should have been done better. I submit that there is no basis whatever for saying that the trial judge erred in his ruling.

I am authorized to state that Chief Justice Harris joins in this opinion.