Willie Ray MACKEY *v.* STATE of Arkansas

CR 82-120                                     651 S.W.2d 82

Supreme Court of Arkansas
Opinion delivered May 31, 1983

*Campbell & Campbell,* by: *James C. Campbell,* for appellant.

*Steve Clark,* Atty. Gen., by: *Leslie M. Powell,* Asst. Atty. Gen., for appellee.

JOHN I. PURTLE, Justice. This appeal from the Garland County Circuit Court arises from appellant's conviction of first degree murder wherein he received a life sentence and a fine of $15,000. Six points for reversal are argued and will be set out separately in the opinion below. We do not find that any prejudicial error occurred in the appellant's trial.

Appellant was charged with capital murder in furtherance of the crimes of robbery and kidnapping, in violation of Ark. Stat. Ann. § 41-1501 (Repl. 1977). Vladimir Vejrosta was murdered on January 20, 1981. His body was discovered in the trunk of his car at the Dallas-Fort Worth airport on

April 10, 1981. An autopsy revealed he died as a result of two gunshot wounds to the top of his head. The victim also had evidence of blunt trauma to his rib muscles which injury occurred prior to his death.

Appellant's involvement commenced in late 1980 when he and his wife, Judy Mackey, entered into negotiations with the deceased to sell him some gold coins. Various witnesses established that the coin deal was to be consummated on January 20, 1981, at which time Vejrosta was to give appellant's wife a check for $15,000 in return for the coins. The appellant and/or his wife cashed the check at a used car lot where appellant used $6,500 to purchase a Corvette. The dealer testified appellant had been trying to deal for the vehicle over a period of several weeks and had said he was waiting for a check to clear. Officers of a local bank testified they had required the deceased to deposit his check from a Nebraska bank in a Hot Springs bank until it cleared. On January 20, 1981 the bank allowed Vejrosta to draw on the Nebraska check and established a checking account for Vejrosta who in turn wrote a $15,000 check payable to appellant's wife. This was the last day Vejrosta was seen alive.

The investigation was long and complicated. Appellant became a suspect and was picked up for questioning on May 18, 1981, in Crescent City, California and three days later was arrested for interstate flight to avoid prosecution. On May 22, 1981, he informed the California authorities that he would waive extradition hearings and return to Arkansas. An Arkansas parole officer picked appellant up on June 29, 1981 and returned him to the Garland County jail on July 2, 1981. The information was filed on July 14, 1981 and a hearing was held the next day. On that day appellant was held to be a parole violator and it was found that he should be returned to the Arkansas Department of Corrections. However, it appears that he remained in the Garland County jail up until his trial was completed on May 21, 1982.

On August 6, 1981, the information was amended to also charge appellant's wife, Judy Mackey, with capital

murder. She was arrested, made bond, fled the state and has not been heard from since.

Testimony at the trial was to the effect that the deceased either bought or attempted to buy gold coins from appellant and his wife. There was uncontradicted evidence that the victim gave them a check for $15,000 on the day he was murdered. Other testimony was to the effect that appellant's brother, Carl Mackey (who pled guilty to the crime of hindering apprehension), helped appellant and his wife dispose of decedent's body. Carl was the state's chief witness; he testified that he went to appellant's home on the evening of January 20, 1981, helped wrap the body of the victim and transport it to the Dallas-Fort Worth airport. Carl was paid $500 for driving the victim's vehicle, with the body in the trunk, to the airport. He testified that appellant and Judy Mackey both told him they had killed a man whom they had set up on a deal to purchase nonexistent gold coins.

It was appellant's contention that his wife killed Vejrosta while appellant was visiting his parents in the early afternoon. He further contended that she later told him about the killing and he helped dispose of the corpse in order to keep from having his parole revoked for being present with his wife after she killed Vejrosta. These matters were told to the jury in the opening statement by appellant's attorney. The jury was instructed that Carl was an accomplice and that his testimony alone was not sufficient to convict the appellant. The jury convicted appellant of murder in the first degree, sentenced him to life and fined him $15,000.

I

The appellant argues he was denied a speedy trial as required by A.R.Cr.P., Rule 28 and the federal and state constitutions. Our Rule 28 was adopted for the purpose of enforcing the constitutional provisions requiring a speedy trial. Rule 28.1 (a) requires a person held in jail on an offense to be tried within nine months or released on his own recognizance. Rule 28.1 (b) requires a person being held in prison in this state to be tried within twelve months,

excluding periods of necessary delay, or if this provision is not complied with to be granted an absolute discharge as to the offense charged.

Appellant was first arrested on May 21, 1981. His trial commenced on May 18, 1982 and concluded on May 21, 1982. The record reveals he was arrested for parole violation and as a fugitive avoiding prosecution. He was questioned about the murder while he was under arrest in California but he was not charged. The information was not filed until July 14, 1981. Since his parole was revoked and he still had time to serve, it can be concluded that he was being held in prison within this state for conviction of another crime. No doubt he was held in the Garland County jail for the convenience of his attorney and the state. He was not being held in jail solely on the pending charge for the nine months, but even if he were, he would have only been entitled to release on his own recognizance. A.R.Cr.P., Rule 28.1 (a). He was subject to release from the former sentence on March 28, 1982. Under the circumstances he was held on the present charge for less than two months. Therefore, if all time claimed to be excluded by the state is eliminated he is still not entitled to relief pursuant to Rule 28.

## II

Appellant also makes the argument that there was not sufficient independent evidence to corroborate the accomplice's testimony. We agree with appellant's statement of the law that such other evidence is insufficient if it merely shows that the offense was committed and the circumstances thereof. Ark. Stat. Ann. § 43-2116 (Repl. 1977). The corroborating evidence must be of a substantial nature which tends to some degree to connect the defendant with the commission of the crime. *King v. State*, 254 Ark. 509, 494 S.W.2d 476 (1973). Some of the independent evidence tending to connect the appellant with the crime was: he was in possession of and assisted in cashing the decedent's check on the day it was issued; he was dealing with the victim for the sale of gold coins with a value of $15,000 which coins were not seen by others with the exception of a few coins which were tested; he purchased a car with part of the

proceeds of the victim's check; he admitted helping dispose of the body to avoid anyone being apprehended; and he traveled to California shortly after the murder. The evidence, other than the accomplice's testimony, is substantial and tends to connect the appellant with the crime. It was, therefore, proper to allow the jury to consider the totality of the evidence, including the accomplice's testimony.

## III

It is also argued that the trial court erred in refusing to allow a witness to testify that he had sold a .22 revolver to Judy Mackey and another one to the deceased. We think this evidence should have been admitted pursuant to Arkansas Uniform Rules of Evidence, Rule 401. However, the error cannot be considered prejudicial because the same evidence was introduced by other witnesses and was properly before the jury for its consideration. Geryaldine Ivan and Jack Mackey both testified that the victim had a handgun in his possession at the time the transaction between the Mackeys and the victim took place. Dorothy Mackey testified that she had seen Judy Mackey with a .22 handgun on many occasions. Therefore, the proffered testimony would have been cumulative in nature.

## IV

It is argued that the trial court erred in refusing to order subpoenas for out of state government employed witnesses. These witnesses had performed certain tests which had been negative or at least inconclusive in connecting appellant to the crime. We think the trial court erred in refusing to issue the subpoenas. However, the error is rendered harmless by events which occurred at the trial. During appellant's opening and closing statements the jury was told that all of these tests were run and produced no evidence incriminating the appellant. Additionally, detective Don Adams stated none of the test reports were returned to him. The detective's testimony, coupled with appellant's opening statement and closing argument makes it obvious that the jury knew the test results were negative. This is the same testimony the witnesses sought by appellant would have presented. The

state attempted to prevent the negative test results from being presented to the jury. Had any of these tests been positive the state would have offered the results into evidence. The very purpose of the tests was to obtain relevant evidence connecting appellant to the murder of Vejrosta. To hold the negative test results inadmissible would be tantamount to holding that such evidence is admissible only if it points to a defendant's guilt. The results of such tests are admissible pursuant to Rule 402.

It is true that Ark. Stat. Ann. § 43-2001 (Repl. 1977) provides for unlimited out of state witnesses in capital felony cases. However, this statute must be read in conjunction with Ark. Stat. Ann. § 43-2006 (Repl. 1977) which provides that such witnesses must be material. We have interpreted these statutes by declaring such right not to be absolute but, rather, resting within the sound discretion of the trial judge. *Wright* v. *State,* 267 Ark. 264, 590 S.W.2d 15 (1979). We have also held that the right to have out of state witnesses in capital felony cases means material witnesses. *Henry* v. *State,* 278 Ark. 478, 647 S.W.2d 419 (1983). Under the circumstances contained in this case we do not find the error to be prejudicial.

V

Did the trial court err in permitting a witness to offer hearsay testimony? We think it did not. The hearsay testimony was that the deceased told a friend, "Well, if grandma is a man, I'll leave." The statement involved a proposed meeting between the deceased and the appellant's wife in the matter of negotiating for the sale and purchase of the coins. Uniform Rules of Evidence, Rule 803 reads in part:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(3) . . . A statement of the declarant's then existing state of mind, emotion, . . . plan, motive, design, mental feeling . . .

The state was allowed to introduce the statement for the purpose of showing the victim's state of mind. However, during closing arguments the state said "grandma" was the defendant, thereby showing that the appellant planned to meet with the deceased on the date of his death. Although the state misused the statement in closing argument it was nevertheless proper for the purpose for which the court allowed its introduction. We have held that evidence of the state of mind of the victim, prior to a murder, was admissible. *State* v. *Abernathy,* 265 Ark. 218, 577 S.W.2d 591 (1979). *See also United States* v. *Calvert,* 523 F.2d 895 (8th Cir. 1975).

## VI

Appellant's final argument is that the trial court erred in limiting the testimony of a witness for the defense. The testimony was offered for the purpose of attacking the credibility of Judy Mackey, the appellant's wife and apparent accomplice, who was not present at appellant's trial. The proffered testimony portrayed Judy Mackey as an unfaithful and lying wife and said she was involved in prostitution. It also contended she had acted in the same manner with several of her former husbands. Uniform Rules of Evidence, Rule 608 states:

> . . . The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

> (b) . . .specific instances of the conduct of a witness . . . may . . . if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness . . .

In interpreting Rule 608 we have adopted a three-fold test of

admissibility: 1) the question must be asked in good faith, 2) the probative value must outweigh its prejudicial effect, and 3) the prior conduct must relate to the witness' truthfulness. *Cameron* v. *State,* 272 Ark. 282, 613 S.W.2d 593 (1981). We specifically held that it was error to ask about instances of conduct which were not probative of veracity. *Divanovich* v. *State,* 271 Ark. 104, 607 S.W.2d 383 (1980).

The elicited testimony was proffered during direct testimony of a witness for the defense. Rule 608 (a) allows credibility evidence only after the witness' character for truthfulness has been attacked. Section (b) allows such testimony only on cross-examination. In any event the trial court did not err in this matter because Rule 608 applies to examination of witnesses and Judy Mackey was not a witness in this case.

We have reviewed the record for all objections made by the appellant and find no adverse rulings to him which were prejudicial.

Affirmed.