

# ARKANSAS COURT OF APPEALS

DIVISIONS III & IV
**No.** CR–15–738

| | |
|---|---|
| NATHAN INSKEEP<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered March 2, 2016<br><br>APPEAL FROM THE GREENE COUNTY CIRCUIT COURT [NO. CR–2014–236]<br><br>HONORABLE BRENT DAVIS, JUDGE<br><br>AFFIRMED AS MODIFIED |

## BRANDON J. HARRISON, Judge

Nathan Inskeep appeals his conviction for aggravated residential burglary and argues that the circuit court erred in denying his motion for directed verdict because the State presented no substantial evidence that he inflicted or attempted to inflict death or serious physical injury on another person. We agree that the circuit court erred in denying the directed-verdict motion because the evidence failed to show that Inskeep attempted to inflict death or serious physical injury as required by Ark. Code Ann. § 5-39-204(a)(2) (Repl. 2013). We therefore modify Inskeep's sentence from forty years' imprisonment to twenty years' imprisonment, the maximum sentence for residential burglary.

In a criminal information filed 29 May 2014, Inskeep was charged with aggravated residential burglary, breaking or entering, indecent exposure, and third-degree battery. At a jury trial, Leana Wright testified that on 17 April 2014, she took her son to school and

SLIP OPINION

then went grocery shopping at Dollar General with her fifteen-month-old daughter. At the store, she saw a white extended-cab truck parked close to her vehicle and saw a man (Inskeep) inside the truck. She drove home and took the groceries and her daughter inside; at that time, she heard a horn honking and saw the same white truck parked in her driveway. She looked out to the driveway from the doorway, holding the screen door open with her foot and with her daughter on her left arm. She saw Inskeep waving for her to approach his truck, and she shook her head "no." At that point, Inskeep exited his truck, and Wright saw that he was not wearing any clothes from the waist down and was masturbating. She tried to run inside and shut the door, but she heard the screen door open behind her, and Inskeep grabbed her left shoulder. She kicked behind her and ran, screaming for her husband, Corey, who was asleep. She explained that she ran through her living room, dining room, and laundry room, past the play room, and into her bedroom. She said that Corey saw Inskeep in the dining room and then chased Inskeep out of the house. Wright then noticed a scratch on her daughter's cheek that had not been there before.

On cross-examination, she confirmed that Inskeep stopped chasing her "mid-way through [the] dining room." She also stated that the baby's cheek was scratched when Inskeep grabbed her shoulder but admitted that she did not see the injury happen. She also discussed her statement given to the police immediately after the incident and said that she did not allege any injury to herself and did not allege that Inskeep attempted to rape her. She stated that Inskeep did not verbally threaten her; they never exchanged

words. On redirect, she agreed that she was scared when she saw Inskeep masturbating in her front yard and when he grabbed her.

Corey Adams, Wright's husband, testified that he awoke on the morning of 17 April 2014 to his wife yelling for him. When he got to her and asked what was wrong, she said, "He tried to f----- rape me." Adams ran toward the kitchen and saw a man in a red sweatshirt with no pants "just standing there with a kind of weird look on his face." The man (identified as Inskeep) ran out the door toward his truck, and Adams chased him to the door. Inskeep got in his truck, and Adams ran toward the truck. After returning to the house to get clothes and tell his wife to get the gun and call the police, Adams pursued Inskeep in his vehicle but did not find him.

Jessica Thorpe, the girlfriend of Adams's brother, was staying with Wright and Adams along with her two children. She testified that on 17 April 2014, she was sleeping in the play room and woke up to Wright screaming and yelling. Thorpe saw Wright collapsed on the floor outside of her bedroom with her daughter in her arms and then saw a man in the dining room wearing a red sweatshirt and nothing else. She identified Inskeep as that man.

Police Chief Steve Franks, with the Marmaduke Police Department, testified that he was called to Wright's residence on the morning of the incident and took Wright's statement. From her description of the suspect and the truck, Franks developed Inskeep as a suspect and showed a photo line-up to Wright and Adams separately. They both identified Inskeep as the perpetrator. Franks confirmed that there was no physical evidence that put Inskeep in Wright's home.

The State rested, and the defense moved for directed verdict. On the aggravated-robbery charge, Inskeep argued that there was no proof that he attempted to commit rape or that he attempted to inflict serious physical injury. The State responded that there was "more than enough evidence . . . to show that he entered the house with the purpose of committing sexual assault" and that "rape or a sexual assault is a serious physical injury."[1] The court found that

> the fact that he had followed her from a location some distance from her home, had forced his way into her house, had grabbed her and only stopped his physical assault of her after she kicked him and gained some degree of separation and screaming for other occupants in the house to come to her aid, that under those circumstances . . . it certainly is a jury question as to whether his acts as he entered the house, grabbed her, the acts which are alleged to have caused injury to the baby, and as under the circumstances in all of these events leading up to it, that the jury could determine from that evidence that those constituted an attempt to inflict serious physical injury or death upon another person.

The defense rested and renewed its motion, which was denied. The jury was instructed that to sustain the charge of aggravated residential burglary, the State must prove the following things beyond a reasonable doubt:

> First: That Nathan L. Inskeep entered or remained unlawfully in [Wright's residence]; and
> Second: That he did so with the purpose of committing therein the offense of Rape; or Sexual Assault, or Indecent Exposure, or Battery in the Third Degree; and
> Third: That [Wright's residence] was occupied by a person; and

---

[1] During the directed-verdict discussion, the court stated that "the State originally indicated in the information that the offense, that the Aggravated Residential Burglary, the entry into the house was with the intent to commit rape. . . . The State, as a corollary to the argument this morning moving to amend based on the proof, the charge or instruction to the jury that it include not only Rape, but Sexual Assault[.]" The criminal information and amended criminal information included in the record do not contain a reference to rape or sexual assault.

Fourth: That Nathan L. Inskeep inflicted or attempted to inflict death or serious physical injury upon another person.

The jury found Inskeep guilty, and he was sentenced to forty years' imprisonment for aggravated residential burglary, one year in the county jail for indecent exposure, and one year in the county jail for battery, all to run concurrently. (The breaking-or-entering charge was nolle prossed.) Inskeep filed a timely notice of appeal from his conviction.

This court treats a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Gwathney v. State*, 2009 Ark. 544, 381 S.W.3d 744. In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State, consider only the evidence that supports the verdict, and we affirm if substantial evidence exists to support the verdict. *Id.* Substantial evidence has sufficient force and character such that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Campbell v. State*, 2009 Ark. 540, 354 S.W.3d 41.

A person commits residential burglary if he or she enters or remains unlawfully in a residential occupiable structure of another person with the purpose of committing in the structure any offense punishable by imprisonment. Ark. Code Ann. § 5-39-201(a)(1) (Repl. 2013). A person commits aggravated residential burglary if he or she commits residential burglary as defined in § 5-39-201 of a residential occupiable structure occupied by any person, and he or she: (1) is armed with a deadly weapon or represents by word or conduct that he or she is armed with a deadly weapon; or (2) inflicts or attempts to inflict death or serious physical injury upon another person. Ark. Code Ann. § 5-39-204(a). Serious physical injury is defined as a physical injury that creates a substantial risk of death

or that causes protracted disfigurement, protracted impairment of health, or loss or protracted impairment of the function of any bodily member or organ. Ark. Code Ann. § 5-1-102(21) (Repl. 2013).

Inskeep does not argue that the elements of residential burglary were not met; instead, as he did below, he argues that the State failed to prove that he inflicted or attempted to inflict death or serious physical injury upon another person, nor was there any evidence that he was armed with a deadly weapon or that he represented that he was so armed. On the contrary, Inskeep argues, the evidence showed that he was unarmed, that he never spoke to the victim, and that he only "grabbed her shoulder so as to get her attention." He admits an intention to draw attention to himself for some type of sexual gratification but denies any infliction or attempt to inflict a serious physical injury.

In response, the State contends that the jury could infer that Inskeep intended to inflict serious physical injury on Wright or her child and that he attempted to inflict it. The State argues that "silently pursuing a woman (who, to all appearances, is alone except for the baby in her arms) into her house after she refuses to come to you, attempting to grab her, and continuing to pursue her as she flees screaming through her home—all done while naked below the waist—is inherently threatening."

It is undisputed that Inskeep was not armed and did not represent that he was armed; so the question is whether the State presented substantial evidence that Inskeep inflicted or attempted to inflict serious physical injury upon the victim. The State argued below (but not on appeal) that "rape or sexual assault is a serious physical injury." While it is true that rape is, by definition, a serious and violent offense, *see, e.g., Ring v. State*, 320

Ark. 128, 894 S.W.2d 944 (1995), no case law holds that an attempted rape or attempted sexual assault equates to an attempt to inflict "serious physical injury" as that term has been defined by the General Assembly. *See Dillon v. State*, 311 Ark. 529, 844 S.W.2d 944 (1993) (holding that "serious physical injury" is not an element of the crime of rape); *Strawhacker v. State*, 304 Ark. 726, 804 S.W.2d 720 (1991) (distinguishing as totally separate the "serious physical injury" for purposes of first-degree battery from the "forcible compulsion" required in a rape case). There is no doubt that a serious physical injury could be inflicted during a sexual assault. But under current Arkansas law, a sexual assault does not necessarily constitute a serious physical injury.

On the attempt element, a person attempts to commit an offense if he "purposefully engages in conduct that . . . [c]onstitutes a substantial step in a course of conduct intended to culminate in the commission of an offense[.]" Ark. Code Ann. § 5-3-201(a)(2). Even assuming that Inskeep did intend to sexually assault Wright, we hold that his intention, combined with his pursuing Wright into her home, grabbing her shoulder, and causing a minor scratch to the baby's face, does not constitute a substantial step toward inflicting a serious physical injury. We do not downplay the trauma that Wright and her family experienced at Inskeep's criminal hand. But Arkansas law, as it currently stands, does not support the jury's verdict of guilty on the aggravated residential-burglary charge. As the case law shows, more is required to sustain a conviction when an element of the crime requires an attempt to commit a serious physical injury. *See, e.g.*, *Tarentino v. State*, 302 Ark. 55, 786 S.W.2d 584 (1990) (hitting victim in the head three times with a baseball bat constituted serious physical injury); *Lum v. State*, 281 Ark. 495,

665 S.W.2d 265 (1984) (serious physical injury inflicted when victim was struck three times with a fist causing face fractures and temporary impairment of vision); *Britt v. State*, 83 Ark. App. 117, 118 S.W.3d 140 (2003) (serious physical injury inflicted when child victim sustained extensive scalding burns primarily on her feet that required debriding and physical therapy to prevent permanent loss of mobility). Because there is insufficient evidence that Inskeep attempted to inflict a serious physical injury, and the jury would have had to resort to speculation and conjecture to decide that such an attempt was made on this record, we reverse the conviction for aggravated residential burglary.

That is not the end of it. When the proof offered supports a conviction on a lesser-included offense but not the offense the accused was convicted of, this court may reduce the punishment to the maximum for the lesser-included offense, or reduce it to the minimum for the lesser offense or something in between, depending on the circumstances. *Smith v. State*, 352 Ark. 92, 98 S.W.3d 433 (2003). Here, Inskeep does not dispute that the elements of residential burglary were proven, so we modify his sentence to the maximum allowed for residential burglary, a Class B felony, which is twenty years' imprisonment. *See* Ark. Code Ann. § 5-4-401(a)(3).

Affirmed as modified.

VIRDEN, KINARD, GLOVER, and HIXSON, JJ., agree.

VAUGHT, J., dissents.

**LARRY D. VAUGHT, Judge, dissenting.** The majority concludes that because serious physical injury is not an element of sexual assault,[2] we must reverse the jury's finding

---

[2] *Dillon v. State*, 311 Ark. 529, 542, 844 S.W.2d 944, 950 (1993).

that the appellant attempted to inflict serious physical harm when he attempted to sexually assault Ms. Wright. That is illogical and not grounded in any statutory or case law in Arkansas. The jury correctly found that when a man follows a woman home, intrudes into her house naked from the waist down, masturbates in front of her and her small child, chases and grabs her, and continues to pursue her throughout the house even as she kicks, screams, and fights him off, he has attempted to seriously injure her. Other than the five judges in the majority, I would be hard-pressed to find anyone who disagrees.

Inskeep attempted to have sexual contact with Wright by means of physical force. He demonstrated a complete disregard for the welfare of the young daughter Ms. Wright was holding throughout the ordeal. While the child suffered only a small scratch, the risk posed to her safety was much greater. She could have been dropped during the chase or injured as Ms. Wright fought off the appellant. The jury could and did infer that if appellant had caught Wright and had her husband not been home to intervene, appellant would have seriously harmed her. That conclusion does not rely on the elements of sexual assault or rape, but on the natural consequences of the acts of the appellant. This is not a statutory construction case. We are not called on to determine if serious physical harm is a necessary element of every rape or sexual assault. It is undisputed that it is not. *Dillon*, 311 Ark. at 542, 844 S.W.2d at 950. The majority's focus on this line of cases is a red herring; it fails to recognize that, although not *all* sexual assaults involve serious physical injury, some do, and the jury in this case found that Inskeep attempted to inflict serious physical injury or death on Wright when he attempted to sexually assault her.

When Inskeep argued to the circuit court that there was not enough evidence to support his conviction, the court ruled that "rape or sexual assault is a serious physical injury." I agree with that position. However, that is not the question before us. We must only determine whether these particular facts constituted an attempt to inflict serious physical injury or death. The jury believed that they did, and I see no compelling reason to reverse their sound judgment. My colleagues disagree and would require more in order to meet the high threshold for aggravated residential burglary. The obvious question, then, is how much more? What else should be required when a half-naked man attacks a woman and her child in their home? Must he verbally state his intent to kill or seriously injure? Must he land a punch or break a bone before the law will recognize his acts as "aggravated?" Under the majority's approach, an attacker could complete the act of rape during a residential burglary and it still would not qualify as an "attempt to inflict serious physical injury or death" if the victim was able to avoid such injury by complying with the attacker's demands. The majority approach treats the defendant who breaks into a home with the specific intent to rape a resident the same as a burglar who breaks in to steal a television set while no one is home. I cannot accept that such a rule was the intent of the legislature in enacting Arkansas Code Annotated section 5-39-204(a) (Repl. 2013).

Our sole task is to determine if the jury had sufficient facts to find that appellant attempted to inflict serious physical injury to Ms. Wright or her fifteen-month-old child. I have no trouble affirming that it did. I refuse to tell the women of this state that if a masturbating, half-naked man forces his way into your home, grabs you, and chases you

through the house while you try to fight him off, don't worry—he probably doesn't intend

to seriously hurt you . . . only to sexually assault you.

*Will A. Kueter*, for appellant.
*Leslie Rutledge*, Att'y Gen., by: *Christian Harris*, Ass't Att'y Gen., for appellee.