Travis Wayne DAVIS, Jr. *v.* STATE of Arkansas

CR 05-1257                                    240 S.W.3d 115

Supreme Court of Arkansas
Opinion delivered September 28, 2006

*Patrick J. Benca, John Wesley Hall, Jr.*, and *Jeff Rosenzweig*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant Travis Wayne Davis, Jr., appeals the judgment and commitment order of the Lonoke County Circuit Court convicting him of (1) manufacturing a controlled substance, methamphetamine; (2) possession of a controlled substance, methamphetamine, with intent to deliver; (3) possession of drug paraphernalia with intent to manufacture methamphetamine; (4) possession of drug paraphernalia; (5) possession of a controlled substance, marijuana, third offense; and (6) maintaining a drug premises. Appellant filed a conditional plea of guilty pursuant to Ark. R. Crim. P. 24.3(b), whereby he reserved his right to appeal from the circuit court's denial of his motion to suppress evidence

seized during the nighttime search of his business. Appellant was sentenced to 120 months' imprisonment on each, to run concurrently. On appeal, Appellant argues that the circuit court erred in denying his motion to suppress because (1) the judge who signed the search warrant was not a neutral and detached magistrate due to his concurrent position as an Assistant Attorney General for the State of Arkansas, and (2) the good-faith exception, enumerated in *United States v. Leon*, 468 U.S. 897 (1984), does not apply when the affidavit for the search warrant did not recite sufficient facts to warrant a nighttime search and the warrant does not make a finding to justify a nighttime search. As this case involves an issue of first impression, our jurisdiction is proper pursuant to Ark. Sup. Ct. R. 1-2(b)(1).[1] We find no error and affirm.

Because Appellant does not challenge the sufficiency of the evidence to convict him, it is not necessary to recite the facts in great detail. On April 17, 2004, around 4:28 a.m., Detective Keenan Carter presented an affidavit for a nighttime search warrant to District Judge Joseph Svoboda. The affidavit contained information from outside sources, as well as Detective Carter's own observations, that a controlled substance, methamphetamine, was being manufactured at the business, Core, Inc. Based upon this affidavit, Judge Svoboda issued a nighttime search warrant for Core, Inc., owned and operated by Appellant. At the time he issued the warrant, Judge Svoboda also was an Assistant Attorney General for the State, in the criminal division, handling state and federal habeas corpus matters.

On June 22, 2004, Appellant filed a motion to suppress evidence obtained as a result of the search. On June 7, 2005, a hearing was held on the matter. The circuit court orally denied Appellant's argument that Judge Svoboda was not a neutral and detached magistrate because of his employment with the State. Furthermore, in a June 20, 2005, letter opinion, the circuit court confirmed its ruling denying the motion to suppress based upon arguments of the partiality of the magistrate. The court also ruled that the warrant issued did not contain a judicial finding in compliance with Ark. R. Crim. P. 13.2(c); however, the court denied the motion to suppress the evidence, finding that the officer's actions were warranted under the good-faith exception.

---

[1] A companion case, *Davis v. State*, 367 Ark. 341, 240 S.W.3d 110 (2006), is also decided this date.

On August 8, 2005, Appellant filed a motion for reconsideration. The court denied this motion. Subsequently, Appellant entered a conditional plea of guilty pursuant to Rule 24.3(b), preserving his right to appeal from the court's denial of his pretrial motion to suppress. This appeal followed.

## I. Neutral and Detached Magistrate

For his first argument, Appellant maintains that the circuit court erred in denying his motion to suppress because the issuing judge was not a neutral and detached magistrate. Specifically, he asserts that Judge Svoboda cannot be a neutral and detached magistrate because he also was a full-time assistant attorney general at the time he signed the search warrant.

In reviewing the denial of a motion to suppress, we conduct a de novo review based on the totality of the circumstances. *See Dickinson v. State*, 367 Ark. 102, 238 S.W.3d 125 (2006). We reverse only if the ruling denying a motion to suppress is clearly against the preponderance of the evidence. *Id.*

In *Johnson v. United States*, 333 U.S. 10, 13-14 (1948) (footnote omitted), the United States Supreme Court stated:

> The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.

The Supreme Court has carved out two main ways in which a magistrate can deviate from his judicial role of neutrality and detachment: (1) when he has a substantial pecuniary interest in the outcome of the case, or (2) when he is acting in a law-enforcement capacity. *See Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319 (1979); *Connally v. Georgia*, 429 U.S. 245 (1977); *Ward v. Village of Monroeville*, 409 U.S. 57 (1972); *Shadwick v. City of Tampa*, 407 U.S. 345 (1972); *Coolidge v. State*, 403 U.S. 443 (1971); *Turney v. Ohio*, 273 U.S. 510 (1927). The issue in this case involves the latter of the two.

This court has adopted the rule that a magistrate cannot be neutral and detached if he is acting in a law-enforcement capacity. *See Echols v. State*, 326 Ark. 917, 952, 936 S.W.2d 509, 526 (1996)

(holding that "[w]hen a judicial officer becomes so involved in the investigation as to be deemed a participant, he has abandoned this role"). While this court has not reviewed the situation where an issuing magistrate is also an assistant attorney general, other jurisdictions have dealt with comparable situations.

In *Coolidge*, 403 U.S. 443, a state attorney general, authorized as a justice of peace, issued a warrant authorizing the search of an automobile and was actively in charge of the investigation, as well as the prosecution at trial. The Supreme Court found that the attorney general's actions disqualified him as a neutral and detached magistrate as required by the Fourth Amendment. *Id.* Specifically, the Court concluded that the search and seizure of the appellant's automobile could not "constitutionally rest upon the warrant issued by the state official who was the chief investigator and prosecutor." *Id.* at 453. Additionally, in *Lo-Ji Sales*, 442 U.S. 319, the Supreme Court found that "[t]he Town Justice did not manifest that neutrality and detachment demanded of a judicial officer when presented with a warrant application for a search and seizure" because "[h]e allowed himself to become a member, if not the leader, of the search party which was essentially a police operation." *Id.* at 326-27. These cases stand for the rule that an issuing magistrate cannot be neutral and detached if he is actively involved in the investigation and the "competitive enterprise of ferreting out crime." *Johnson*, 333 U.S. at 14.

In the present case, Judge Svoboda is both a part-time district judge and an assistant attorney general. Appellant has presented no evidence, besides the nature of Judge Svoboda's employment with the State, that the judge was not neutral and detached. Specifically, no evidence was presented that Judge Svoboda actively involved himself in the investigation similar to the magistrates in *Coolidge* and *Lo-Ji Sales*. Therefore, the circuit court did not err in finding that the judge was a neutral and detached magistrate.[2]

Moreover, this conclusion is supported by decisions from both federal circuit courts and state supreme courts. *See United States v. McKeever*, 906 F.2d 129, 131 (5th Cir. 1990) (holding "a

---

[2] We take this opportunity to note that while an issuing magistrate's concurrent employment with the State Attorney General's office is not a *per se* violation of the "neutral and detached" requirement, this is not an encouraged practice as it could give rise to the appearance of impropriety.

magistrate may retain certain law enforcement duties without losing her neutrality"); *State v. Schoonover*, 281 Kan. 453, 517, 133 P.3d 48, 91 (2006) (quoting *Green v. State*, 676 N.E.2d 755, 761 (Ind. App. 1996)) (holding that an issuing judge is neutral and detached, despite previously representing the defendant, as " '[t]he requirement that a warrant must be issued by a neutral and detached magistrate does not equate to a constitutional mandate requiring that a judge have no contact with or knowledge of the case or the defendant' "); *Wilson v. State*, 333 N.E.2d 755, 760-61 (Ind. 1975) (holding "that a law partner of a deputy prosecutor is not ipso facto disqualified from issuing a search warrant in a case in which the deputy may be or may become involved in any degree"). *See also United States v. Waters*, 786 F. Supp. 1111, 1117 (N.D.N.Y. 1992) (holding that a magistrate, who was formerly an Assistant United States Attorney, was a neutral and detached magistrate when there was no "concrete evidence that [the magistrate] was involved in his prior capacity as Assistant United States Attorney in an investigation of defendant in an open criminal file to which he was assigned"). Thus, our holding that Judge Svoboda was a neutral and detached magistrate when he signed the search warrant is in line with other jurisdictions. As such, the circuit court did not err in denying the motion to suppress.

## II. Nighttime Search

Appellant's second argument asserts that the circuit court erred in denying his motion to suppress based upon its ruling that the good-faith exception applied when the affidavit for the search warrant did not recite sufficient facts to warrant a nighttime search. Specifically, Appellant is not challenging the insufficiency of the affidavit and the court's finding that the warrant lacked a judicial finding in compliance with Rule 13.2(c), but rather, that an insufficient factual basis for a nighttime search warrant is a substantial violation thus rendering the good-faith exception inapplicable. The State counters that the judge's decision to issue a nighttime search warrant was based upon probable cause established by the affidavit. We agree with the State.

As stated above, in reviewing the denial of a motion to suppress, we conduct a de novo review based on the totality of the circumstances. *See Dickinson*, 367 Ark. 102, 238 S.W.3d 125. We reverse only if the circuit court's ruling denying a motion to suppress is clearly against the preponderance of the evidence. *Id*. In this case, the circuit court ruled that the warrant issued did not

contain a judicial finding that complied with Rule 13.2(c). Because the warrant was issued based upon the presented affidavit, it can be concluded the circuit court found that the affidavit lacked sufficient factual information to support a nighttime warrant. *See Hall v. State*, 302 Ark. 341, 789 S.W.2d 456 (1990).

Rule 13.2(c) provides that the issuing judicial officer may authorize a search at any time, day or night, if there is reasonable cause to believe that:

> (i) the place to be searched is difficult of speedy access; or

> (ii) the objects to be seized are in danger of imminent removal; or

> (iii) the warrant can only be safely or successfully executed at nighttime or under circumstances the occurrence of which is difficult to predict with accuracy[.]

Whether the reasonable or probable cause requirement is met turns on the adequacy of the affidavit or recorded testimony. *Yancey v. State*, 345 Ark. 103, 44 S.W.3d 315 (2001).[3] Because there was no recorded testimony given in support of the affidavit, we may not look to facts outside of the affidavit to determine probable cause. *Moya v. State*, 335 Ark. 193, 981 S.W.2d 521 (1998).

Probable or reasonable cause exists where there is a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious person to believe that a crime has been committed by the person suspected. *Dickerson v. State*, 363 Ark. 437, 214 S.W.3d 811 (2005); *Bennett v. State*, 345 Ark. 48, 44 S.W.3d 310 (2001). In assessing the existence of probable cause, our review is liberal rather than strict. *Id.* We have consistently held that a factual basis supporting a nighttime search is required as a prerequisite to the issuance of a warrant authorizing a nighttime search. *Cummings v. State*, 353 Ark. 618, 110 S.W.3d 272 (2003); *Fouse v. State*, 337 Ark. 13, 989 S.W.2d 146 (1999). Moreover, mere conclusions are insufficient to justify a nighttime search. *Langford v. State*, 332 Ark. 54, 962 S.W.2d 358 (1998); *Richardson v. State*, 314 Ark. 512, 863 S.W.2d 572 (1993).

---

[3] There is no substantive distinction between the terms "reasonable" and "probable" cause. *Yancey*, 345 Ark. 103, 44 S.W.3d 315.

In this case, Detective Carter presented an affidavit to Judge Svoboda seeking a nighttime search warrant. This affidavit contained statements of fact based upon Detective Carter's personal observations, as well as information he had received over a period of six weeks related to the manufacturing, sale, and use of methamphetamine taking place at Appellant's business. Also, he stated that on April 14 and 15, 2004, while conducting surveillance of the business, he observed individuals entering and exiting the building carrying various bags. He further explained that this activity was taking place during the nighttime and early hours of the morning. Additionally, on April 16, 2004, around 10:40 p.m., he observed numerous vehicles parked in the parking lot of Appellant's business. He further stated that, after leaving the surveillance spot to perform a traffic stop, he went back towards the business, at which time he observed that the vehicles previously there had left. Detective Carter next described the facts surrounding Appellant's arrest:

> I then proceeded on to Kerr Road, heading north. A Chevy truck traveling south on Kerr Road approached my vehicle traveling at an excessive rate of speed. I turned my vehicle around, at which time the Chevy truck increased its speed. I initiated a traffic stop on the Chevy truck, which was being operated by [Appellant]. A check via ACIC/NCIC revealed that [Appellant's] drivers license was suspended. During a pat down search of [Appellant] prior to his arrest, I located a small plastic bag containing a white powder substance. [Appellant] related to me that he knew that I was the Police and that he was being watched. [Appellant] further related he did attempt to get away from me in his vehicle.

Detective Carter further explained that after the stop, he returned to the business to see if anyone had returned and, from outside the building, he could detect a strong chemical odor emitting from the area of an open window. Lastly, the affidavit stated that Appellant had a suspended license and the passenger of the truck had an active arrest warrant. Both men also had prior convictions for controlled substances.

Upon review of the affidavit, we conclude that it contained language that would give cause to believe that a nighttime search was reasonable. The affidavit presented information that Appellant was aware the business was being watched, Appellant attempted to get away from the police, numerous other

individuals were seen going in and out of the business carrying bags during nighttime and early morning hours, Appellant had a white powder substance on his person when he was arrested, and there was a strong chemical odor emitting from the area of an open window. While we have held that a strong chemical odor is not a reasonable basis for a nighttime search, *see Fouse*, 337 Ark. 13, 989 S.W.2d 146, this, viewed in light of the totality of the facts within the affidavit, was sufficient to support the judge's finding that reasonable cause existed to issue a nighttime search warrant. Specifically, Appellant's comments that he knew he was being watched and that there were other individuals who had been transporting bags in and out of the business late at night are sufficient to give cause to believe that the requirements of Rule 13.2(c) were met.

Lastly, there is no requirement within Rule 13.2(c) that the warrant contain an express judicial finding as to why the magistrate issued the nighttime search warrant. *Cf. Harris v. State*, 262 Ark. 506, 558 S.W.2d 143 (1977). As such, the circuit court erred in concluding that the warrant was not in compliance with Rule 13.2, and, thus, in applying the good-faith exception. While the court erred in its reasoning, the court's judgment should be affirmed as reaching the right result for the wrong reason. *Harris v. City of Fort Smith*, 366 Ark. 277, 234 S.W.3d 875 (2006).

Affirmed.

HANNAH, C.J., BROWN and IMBER, JJ., dissent.

JIM HANNAH, Chief Justice, dissenting. I must respectfully dissent. A nighttime search is at issue. Nighttime searches are, and have always been, of particular concern. In *Harris v. State*, 264 Ark. 391, 393, 572 S.W.2d 389, 393 (1978), this court stated that, "[g]ood cause must exist and be found by the issuing judicial officer to exist to authorize entry into a citizen's privacy in the night time. This is a safeguard justified by centuries of abuse." The business of law enforcement should be carried out in broad daylight for all to see whenever reasonably possible. I do not disagree that there are conditions under which a nighttime warrant is justified and absolutely required. This case does not present such a situation.

In this case, the magistrate was informed that drug activity was occurring in the nighttime and during the early morning hours. Nothing in this case indicates the necessity of a nighttime

search. The magistrate was also informed that upon his arrest, Davis informed police that he knew that he was being watched. While Davis's knowledge might give cause to be concerned that if free he would either inform others to destroy evidence or destroy it himself, he was arrested, putting to rest any such concern. Nor was Davis's passenger a concern as an active arrest warrant had already been issued before the stop so that he was not free to act. Without more, a nighttime search was not justified. Further, as Justice Brown discusses in his dissent, Ark. R. Crim. P. 13.2 was not followed.

Although there is a very understandable desire to control the scourge of drugs and drug-related crime, we must persist in protecting fundamental freedom. We may not forget those centuries of abuse this court mentioned in *Harris.*

BROWN and IMBER, JJ., join this dissent.

ROBERT L. BROWN, Justice, dissenting. I echo what the majority has said about an Assistant Attorney General working in the Criminal Division and the appearance of partiality that gives when that same person is the district judge who issues a search warrant. While the case law supports the majority's conclusion that Judge Svoboda is required to be actively involved in this case at the appellate level as an Assistant Attorney General for an actual conflict to arise, the appearance of bias in favor of law enforcement was very real and palpable when he issued the search warrant. The danger, of course, is that the dual role of judge and law-enforcement advocate erodes public confidence in neutral and detached magistrates, which is unfortunate. However, I do not dissent on this point.

I dissent because of the failure of the affidavit and search warrant in this case to comply with our nighttime search rule, Arkansas Rule of Criminal Procedure 13.2(c) (2006). Since the adoption of this rule in the 1980s, this court has been resolute in holding that the rule be followed for nighttime searches.

The rule provides in pertinent part:

Upon a finding by the issuing judicial officer of reasonable cause to believe that:

(i) the place to be searched is difficult of speedy access; or

(ii) the objects to be seized are in danger of imminent removal; or

(iii) the warrant can only be safely or successfully executed at nighttime or under circumstances the occurrence of which is difficult to predict with accuracy;

the issuing judicial officer may, by appropriate provision in the warrant, authorize the execution at any time, day or night, and within a reasonable time not to exceed sixty (60) days from the date of issuance.

Ark. R. Crim. P. 13.2(c) (2006).

Three cases illustrate how steadfast this court has been in requiring that Rule 13.2(c) be followed. *See Fouse v. State*, 337 Ark. 13, 989 S.W.2d 146 (1999); *Richardson v. State*, 314 Ark. 512, 863 S.W.2d 572 (1993); *Garner v. State*, 307 Ark. 353, 820 S.W.2d 446 (1991). In each case, and many more besides, we emphasized that there must be facts supporting one of the three factors quoted above and a judicial finding to that effect before a nighttime search warrant could issue.

In *Richardson*, we said:

We have consistently held that a factual basis supporting a nighttime search is required as a prerequisite to the issuance of a warrant authorizing a nighttime search .... We have held conclusory language . . . unsupported by facts is insufficient to justify a nighttime search . . . . Given that there was nothing to give reasonable cause to believe the items specified in the search warrant would be disposed of, removed, or hidden before the next morning, issuance of the nighttime search warrant was in error.

314 Ark. at 518-19, 863 S.W.2d at 576.

In *Garner, supra*, we held that the judge who checked two boxes on a search warrant, one which read that the place was difficult of speedy access and the other which said the warrant could only be executed at night, had not complied with Rule 13.2(c). That judge had merely made conclusory statements unsupported by sufficient facts to establish reasonable cause for a nighttime search. Similarly, in *Fouse, supra*, we held that the detective executing the affidavit, though he had touched on imminent removal, had not provided sufficient factual support for a nighttime search.

On the other hand, where sufficient exigent circumstances have been set forth in the police officer's affidavit, which comply with Rule 13.2(c), we have not hesitated to uphold the issuance of

a nighttime search warrant. *See, e.g., Langford v. State*, 332 Ark. 54, 962 S.W.2d 358 (1998); *Owens v. State*, 325 Ark. 110, 926 S.W.2d 650 (1996).

In the case before us, neither the police officer's affidavit nor the judge's search warrant comes close to complying with Rule 13.2(c). Neither document purports to make any reference to the required Rule 13.2(c) criteria of difficulty of speedy access, imminent removal, or the necessity for a nighttime search. The inescapable conclusion is that this court is now retreating from this time-tested rule of criminal procedure that has stood us in good stead for some twenty years. If we are to reexamine such an important rule as Rule 13.2(c), we should do so first through our Criminal Practice Committee where prosecutors, judges, and defense counsel are represented in addition to the Attorney General's office and Prosecutor Coordinator's office. It would be my distinct preference to use this mechanism already in place to examine any change in Rule 13.2(c). To do otherwise undermines not only our rule but also our established procedure for amending our Rules of Criminal Procedure.

For these reasons, I respectfully dissent.

HANNAH, C.J., and IMBER, J., join this dissent.