Eric Wayne KELLEY *v.* STATE of Arkansas

CR 07-353                                    269 S.W.3d 326

Supreme Court of Arkansas

Opinion delivered December 6, 2007

[Rehearing denied January 17, 2008.]

*William R. Simpson, Jr.*, Public Defender, *Sharon Kiel*, Deputy Public Defender, by: *Erin Vinett*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Carolyn Boies Nitta*, Ass't Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. Appellant Eric Wayne Kelley was convicted in the Pulaski County Circuit Court for the rape of M.M., a minor under fourteen years old. Kelley received a sentence of life imprisonment. Now he brings the instant appeal, arguing that the circuit court erred in denying his

motion to suppress certain evidence found during a nighttime search of his home because neither the affidavit nor the search warrant contained sufficient factual basis to justify a nighttime search. We agree, and we reverse and remand.

On November 7, 2005, the Sherwood Police Department received information from Texas authorities that Kelley had outstanding arrest warrants, from Dallas County, Texas, for sexual offenses against children. Sherwood police officers were also notified that Kelley was residing in the Audubon Cove apartments, number 101 C, in Sherwood, that he was using the alias Melvin Kelley, and that he had allegedly been having sexual relations with an eleven- or twelve-year-old boy of Middle Eastern descent.

On November 10 around 6:00 p.m., Officer Kevin Webb was patrolling in the area of Kelley's suspected residence, and he saw a man and a child, who matched the description of the child Kelley was allegedly having sexual relations with, leave apartment 101 C, get into a black Nissan Maxima, and drive away. Officer Webb performed a traffic stop and asked the driver, Kelley, to exit the vehicle. Kelley could not produce a driver's license, and instead presented an identification card bearing his alias. Kelley told Officer Web that the passenger was his "nephew." When Officer Webb talked to the child, M.M., alone, he advised the officer that he was Kelley's "friend." Officer Web placed Kelley under arrest, and Kelley and the child were taken to the police department.

At the police department, Sergeant Jeff Hagar, interviewed M.M. with his mother's permission, and M.M. stated that he and Kelley had been friends for about a year and a half. He told Sergeant Hagar that Kelley had performed oral sex on him approximately ten to twenty times during that period of time. M.M. also stated that Kelley had taken nude pictures of him and stored the pictures on the digital camera and computer in Kelley's apartment.

In the early morning hours of November 11, the officers obtained a nighttime search warrant for Kelley's apartment. The affidavit in support of the warrant contained the facts detailed above, and the officers allegedly gave testimony before the magistrate that Kelley had been adamant in asking the officers at the police department to allow him to call his sister so she could retrieve his medicine from his apartment. The officers told the magistrate that they were concerned that Kelley would ask his

sister to dispose of the camera and computer while she was in the apartment. However, the testimony was not recorded, and the affidavit did not contain any facts concerning Kelley's insistence on calling his sister. Additionally, with regard to the necessity for a nighttime search, the affidavit only stated that

> I also request that the warrant be executed anytime during the day or night due to the fact that the objects to be seized are in danger of imminent removal.

The officers then executed the warrant at Kelley's apartment and seized various electronic equipment, including a computer, digital camera, compact discs, and digital video discs.

The State filed a felony information charging Kelley with the rape of M.M. and later amended the information to include the offense of engaging children in sexually explicit conduct for use in visual or print medium. Kelley filed a motion to suppress the evidence seized during the search of his apartment, because, among other reasons, the search and seizure violated the Arkansas Rules of Criminal Procedure. After a hearing, the circuit court denied Kelley's motion. He was later convicted on the rape charge.[1] Kelley now appeals from his conviction.

For his sole point on appeal, Kelley argues that the circuit court erred in denying his motion to suppress because the affidavit and warrant did not contain any factual basis to support a nighttime search under our rules of criminal procedure. The State, however, argues that Kelley did not have standing to challenge the search. In the alternative, the State presents three arguments: (1) that the circuit court's denial of Kelley's motion was not clearly against the preponderance of the evidence, (2) the good-faith exception to the warrant requirement, under *United States v. Leon*, 468 U.S. 897 (1984), applies to the instant case, and (3) the circuit court's decision to deny Kelley's motion was harmless error. When reviewing a circuit court's decision to deny or grant a motion to suppress, this court conducts a *de novo* review based on the totality of the circumstances, reviewing findings of historical fact for clear error and determining whether those facts give rise to reasonable

---

[1] Prior to trial, the State decided to *nolle prosequi* the charge of engaging children in sexually explicit conduct for use in visual or print medium.

suspicion or probable cause, giving due weight to the inferences drawn by the circuit court. *Davis v. State*, 351 Ark. 406, 94 S.W.3d 892 (2003).

## I. Standing

■ First, we address the State's argument that Kelley did not have standing to challenge the search of his apartment because he was in police custody at the time of the search. When determining whether a defendant had standing to challenge a search, the pertinent inquiry is whether the defendant manifested a subjective expectation of privacy in the area searched and whether society is prepared to recognize the expectation as reasonable. *See Mazenpink v. State*, 336 Ark. 171, 907 S.W.2d 648 (1999). Even though Kelley was not present in his home during the search, he clearly had a subjective expectation of privacy in the area searched because a search of his home was involved, and society would be prepared to recognize a person's subjective expectation of privacy in his own home. *See Mazenpink v. State, supra* (defendant who was not present in his home at the time of the search still had standing to challenge the searching officers' failure to use proper knock-and-announce procedures). Thus, Kelley did have standing to challenge the search of his apartment.

## II. Motion to Suppress

■ We now turn to the issue of whether the circuit court erred in denying Kelley's motion to suppress the evidence found at his home because the nighttime search warrant was not supported by a sufficient affidavit. While Kelley argues that the warrant and affidavit in the instant case were wholly lacking in a factual basis to support a nighttime search, the State asserts that there was sufficient factual basis in the warrant and affidavit, and even if the affidavit and warrant were deficient, the *Leon* good-faith exception should apply. We conclude that the affidavit and warrant lacked any factual basis to support a nighttime search, and the *Leon* good-faith exception is not applicable to the facts of this case.

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. U.S. CONST. amend. IV. This court, however, has recognized a heightened protection of our citizens' right to privacy in their homes. *See Jegley v. Picado*, 349 Ark. 600, 80 S.W.3d 332 (2002). In particular, our

court has been in the vanguard of other jurisdictions in protecting our citizens against unreasonable searches and seizures in their homes at night. *See Garner v. State*, 307 Ark. 353, 820 S.W.2d 446 (1991); *Griffin v. State*, 347 Ark. 788, 67 S.W.3d 582 (2002) (Brown, J., concurring). In addition to the constitutional protections and general rules requiring probable cause to obtain a search warrant, Ark. R. Crim. P. 13.2(c), which was adopted by this court in 1976, expressly provides further protection against unjustified nighttime searches of our citizens' homes. Ark. R. Crim. P. 13.2 (c) (2007). *See also, In re Rules of Criminal Procedure*, 259 Ark. 863, 530 S.W.2d 672 (1975). Rule 13.2(c) mandates that a warrant for a nighttime search be supported by evidence that there is *reasonable cause* to believe that one of the following conditions exists:

> (i) the place to be searched is difficult of speedy access; or

> (ii) the objects to be seized are in danger of imminent removal; or

> (iii) the warrant can only be safely or successfully executed at nighttime or under circumstances the occurrence of which is difficult to predict with accuracy.

Ark. R. Crim. P. 13.2(c) (2007).

As early as two years after our adoption of the Criminal Rules of Procedure, in *Harris v. State*, 264 Ark. 391, 572 S.W.2d 389 (1978), this court was asked to determine the validity of a warrant served at night where the warrant lacked any indication that it could be served either day or night. *Id.* Finding that the warrant was invalid, we emphasized that good cause must exist to authorize entry into a citizen's privacy in the nighttime and remarked that "[t]his is a safeguard justified by centuries of abuse." *Id.* at 393, 572 S.W.2d at 390.

Two years later, we were asked to decide whether the issuance of a warrant based upon an affidavit that detailed the facts concerning a controlled buy of marijuana from the defendant's home but that contained a conclusory statement about "[h]aving found reasonable cause to believe that the substance described herein could be removed unless the search is conducted immediately," was in violation of the defendant's constitutional rights. *State v. Broadway*, 269 Ark. 215, 216, 599 S.W.2d 721, 721 (1980). This court expressed its shock that the magistrate issued a night-

time search warrant based upon the conclusory statement in the affidavit concerning the removal of evidence and clarified the purpose behind including a detailed factual basis in an affidavit to secure a nighttime warrant, by stating "[a]n affidavit should speak in factual and not mere conclusory language. It is the function of the judicial officer, before whom the proceedings are held, to make an independent and neutral determination based upon facts, not conclusions, justifying an intrusion into one's home." *Id.* at 218, 599 S.W.2d at 723. The *Broadway* court then concluded by holding that the magistrate's issuance of a nighttime warrant based upon the conclusory affidavit was a substantial violation of the legal requirements for a nighttime search of the defendant's home. *Id.*

After the United States Supreme Court's decision in *United States v. Leon*, *supra*, our court considered whether the *Leon* good-faith exception could be applied to save a deficient warrant in *Hall v. State*, 302 Ark. 341, 789 S.W.2d 456 (1990). In that case, the affidavit did not contain any facts supporting a nighttime search, and, although the affiant gave testimony that indicated the necessity of a nighttime search, the testimony was not recorded. *Id.* Recognizing our longstanding rule that testimony given before the issuing magistrate must be recorded in order to be considered upon review, this court concluded that nothing in the affidavit indicated reasonable cause to believe that a nighttime search was warranted under Rule 13.2(c). *Id. See also*, Ark. R. Crim. P. 13.1(c) (2007) (requiring recordation of oral testimony given before a magistrate). The *Hall* court concluded that the *Leon* good-faith exception did not apply because officers with reasonable knowledge of what our rules of criminal procedure prohibit would know that a nighttime search made pursuant to the deficient warrant was illegal. *Id.* For a similar result, see *State v. Martinez*, 306 Ark. 353, 811 S.W.2d 319 (1991).

In *Garner v. State*, *supra*, we were asked once again to consider whether the *Leon* good-faith exception would cure an invalid warrant for a nighttime search when, much like in *State v. Broadway*, *supra*, and the instant case, both the warrant and affidavit contained conclusory language that simply mirrored the language of our criminal rule. *Id.* While the court did acknowledge that the good-faith exception could apply in some nighttime search cases, we reiterated that the *Leon* court recognized four instances in which the good-faith belief of the executing officers would never save an invalid warrant:

1. Where the officers misled the issuing judge with information they knew was false or would have known as false, except for reckless disregard of the truth.

2. Where the issuing judge abandons the judicial role of neutrality and detachment and becomes an adjunct law enforcement officer.

3. *Where the officers' affidavit is so lacking in indicia of probable cause as to render official belief as to its existence unreasonable.*

4. Where the search warrant is facially deficient in failing to identify the places to be searched or things to be seized.

*Id.* at 359, 820 S.W.2d at 450 (emphasis added). The *Garner* court pointed out that even though the executing officers might have given oral statements to the municipal judge, which were unrecorded, and the officers may have subjectively believed that they were complying with the law, objectively the affidavit and warrant were lacking in any indicia of reasonable cause. *Id.* This court acknowledged that no oral statements to the magistrate were recorded and hence could not be considered on review. *Id.* Under such circumstances, going outside the affidavit and warrant to the subjective knowledge of the officers was impermissible. *Id.* In short, we concluded that the *Leon* good-faith exception could not be used to cure a warrant and affidavit that were so blatantly lacking in reasonable cause for a nighttime search. *Id.*

Likewise, our court reached a similar conclusion in *Richardson v. State*, 314 Ark. 512, 863 S.W.2d 572 (1993), a case involving the seizure of nude photographs of the appellant's young rape victims and other sexual objects, pursuant to a nighttime search warrant that contained only a conclusory basis for justifying the nighttime search. *Id.* Then, in *Moya v. State*, 335 Ark. 193, 981 S.W.2d 521 (1998), this court decided to follow the Eighth Circuit Court of Appeals' approach for applying the good-faith exception. *Id.* In doing so, we concluded that when determining whether the *Leon* good-faith exception applies in cases where the warrant lacks sufficient probable cause for a search, the appellate court is permitted to go outside the affidavit and consider information known to the officers, even if that information was not presented to the issuing magistrate. *Id.* However, the *Moya* opinion did not address the issue of whether an appellate court could look beyond the affidavit to determine if there was reasonable cause for a nighttime search. *See id.* In sum, the *Moya* opinion incorporated a

federal standard regarding application of the *Leon* good-faith exception to the question of whether there was probable cause to search, but the *Moya* court did not consider the additional requirement of reasonable cause for a nighttime search under our rule 13.2(c), an element not required under federal law. Additionally, in *Fouse v. State*, 337 Ark. 13, 989 S.W.2d 146 (1999), a case decided several months after *Moya*, this court again followed our past holdings and concluded that when an affidavit contains only conclusory statements to justify a nighttime search and only repeats the boilerplate language of Rule 13.2(c), the *Leon* good-faith exception does not apply. More recently, in *Davis v. State*, 367 Ark. 330, 240 S.W.3d 115 (2006), we reiterated that when there is no recorded testimony given in support of an affidavit, this court does not look to facts outside of the affidavit to determine probable cause for a nighttime search. *Id.* at 336, 240 S.W.3d at 120 (citing *Moya v. State, supra*).

In 2003, we considered the question of whether a nighttime search was justified when the defendant, like the appellant here, possessed child pornography and knew that investigating police officers suspected that he had pornographic pictures in his possession. *See Cummings v. State*, 353 Ark. 618, 110 S.W.3d 272 (2003). In that case, this court found that there was evidence in the affidavit supporting a nighttime search because the officers explained in the affidavit that the defendant knew he was under suspicion, and, therefore, was likely to destroy the pictures before the officers could return the next day. *Id.* However, the *Cummings* case is factually distinguishable from the instant case. The affidavit in that case specifically stated that the evidence to be seized was in danger of imminent removal because officers had questioned the defendant about sexual pictures of his minor stepdaughter that were on a website, the defendant admitted to having racy pictures of his step-daughter on his computer, and, after the interview, the defendant was aware that he was under suspicion. *Id.* The defendant in *Cummings* was not only aware that he was under suspicion for sexual conduct with a child, but, more importantly, he was not detained and remained at home with his computer and the pictures after being made aware of the officers' suspicions. *See id.* Moreover, the affidavit explained that the defendant's knowledge about the officers' suspicions was the reason a nighttime search was necessary. In the instant case, Kelley knew he was under suspicion because he was arrested and placed in police custody, but nothing in the affidavit indicated that Kelley was capable of disposing of the evidence at his home before morning. Although Kelley's knowl-

edge of the officers' suspicions could give cause for concern that he might destroy the evidence, the fact that he had been arrested and was being detained would put that concern to rest.

Both dissenting Justices argue that the facts in the affidavit alone constitute sufficient factual basis for this court to determine that a nighttime search was justified. Although we certainly agree that the facts surrounding Kelley's arrest and M.M.'s statement that Kelley had nude pictures of M.M. on his computer and digital camera established sufficient probable cause for a search of Kelley's home in general, we cannot agree that the facts as presented in the affidavit could justify a nighttime search. The simple fact is that the affidavit did not contain any explanation why those facts justified a nighttime search, and the officer's testimony to the magistrate was unrecorded, and, thus, could not be used to save the warrant. *See Hall v. State, supra.* It is true that digital pictures on a computer and camera are both easy to remove and to destroy. But, if the dissenters' approach is taken to its logical end, facts in an affidavit supporting the existence of any easily removable or destroyable evidence, such as illegal drugs, would justify a nighttime search, and as a result, Rule 13.2(c) would be rendered a nullity.

■ In the instant case, the affidavit and warrant only contained the conclusory statement that the objects to be seized were in danger of imminent removal without providing any facts or explanation in support of such a statement. Thus, the affidavit lacked all indicia of reasonable cause to justify a nighttime search, and, under our objective standard, the officers should have known that an affidavit not stating facts that support a nighttime search was in violation of our rules. Accordingly, the *Leon* good-faith exception does not apply here, and we reverse and remand.[2]

### III. Rule 4-3(h) Review

In compliance with Ark. Sup. Ct. R. 4-3(h), the record has been examined for all objections, motions and requests made by either party that were decided adversely to Kelley, and aside from the point of error upon which we reverse this case, no prejudicial error has been found. *See Doss v. State*, 351 Ark. 667, 97 S.W.3d 413 (2003).

BROWN and GUNTER, JJ., dissent.

---

[2] In view of the imposition of a life sentence in the instant case, we cannot say that the circuit court's error was harmless.

Robert L. Brown, Justice, dissenting. At 12:45 in the morning, Sergeant William Michaels gave sworn testimony to a district judge about why the child pornography in Kelley's home was in danger of imminent destruction. This testimony supplemented the Sergeant's affidavit and provided specific reasons why a nighttime search was warranted. The district judge then issued the search warrant.

These facts are undisputed by the parties and underscore why Sergeant Michaels's actions in executing the warrant were objectively reasonable and in good faith under the standard set out in *United States v. Leon*, 48 U.S. 897 (1984), and adopted and applied to nighttime searches by this court, *Richardson v. State*, 314 Ark. 512, 863 S.W.2d 572 (1993). Indeed, the circuit court found that Sergeant Michaels had given this sworn testimony and that was the reason the district judge issued the search warrant.

The majority also does not dispute these facts but contends that since Sergeant Michaels's statements to the district judge, though under oath, were not recorded, they cannot be considered in a good-faith analysis. In reaching this conclusion, the majority relies on cases that predate our decision in *Moya v. State*, 335 Ark. 193, 981 S.W.2d 521 (1998). The *Moya* decision specifically allowed unrecorded oral testimony to be considered in deciding whether a search warrant was executed in good faith for a daytime search. There is no legitimate reason to distinguish between daytime or nighttime searches on the issue of whether unrecorded, sworn testimony can be considered by this court in deciding the issue of good faith. This is particularly true when it is undisputed that the police officer swore under oath that the facts were true. To the extent cases prior to *Moya* required that all sworn statements for nighttime searches be recorded, I would overrule those cases on the basis of our *Moya* decision. Stated simply, *Moya* has changed the law.

What the majority holds is that Sergeant William Michaels operated in bad faith when he swore to the district judge the reasons why he believed a nighttime search was needed. The majority concludes, ironically, that this bad faith existed even while not contesting the sergeant's reasons for the search. The result is that law enforcement officers will now be hamstrung in their ability to move expeditiously at night, even when the protection is in place against an unreasonable search because the police officer has made his case before a judge under oath and believes he is operating in good faith. The fact that the majority

concludes that all sworn facts must either be in the affidavit or recorded unnecessarily restricts law enforcement and completely undercuts the notion that a search will pass muster if the law enforcement officer operates in objective, good faith. *See United States v. Leon*, 48 U.S. 897 (1984).

What follows is the information that the district judge had at his disposal to justify a nighttime search warrant:

- A sworn affidavit which contained these facts:

  – Kelley was a fugitive from Texas who had been previously charged with a sex offense against children and who was currently suspected of having sexual relations with an eleven- or twelve-year-old boy.

  – Kelley had a minor boy, age twelve, in his car at the time of arrest who told the detective that Kelley had performed oral sex on him ten to twenty times and taken nude pictures of him. Kelley also showed the boy pornographic tapes. The boy matched the description of the boy with whom Kelley was alleged to be having sexual relations.

  – Kelley lied about the identity of his passenger and said he was his "nephew."

  – Kelley kept these photographs in his home and the boy believed he stored the photographs on his computer.

  – Kelley had been arrested.

  – The information at the home was in danger of imminent removal.

- Sergeant Michaels's sworn testimony that Kelley was "very, very adamant" about telephoning his sister from jail following his arrest, and Sergeant Michaels feared that the sister would remove or destroy the pornographic evidence.

Following a suppression hearing after Kelley was charged with rape of the twelve-year-old boy and incarcerated, the circuit judge denied suppression and made the following ruling.

So, you have a judge in the middle of the night who has been given information that there are photographs that, in this residence

that could be imminently destroyed or removed. He listens, he reads that, and then at 12:45 a.m. says that he, he authorizes them to go day or night due to the fact that they could be imminently removed. And, I think that lends credence to the judge signed this warrant thinking that those items would be imminently removed. And, I also think it leads to the, to a good faith basis by the officers. If they have a judge at 12:45 in the morning who reads this information and says these things are to be seized because of the danger of imminent removal to go get them, I think the officers can rely on that officer.

So, I'm going to deny the motion to suppress.

The information that the sergeant possessed made his actions entirely reasonable. Moreover, this court has recognized that law enforcement must act quickly at night in certain circumstances. *See, e.g., Cummings v. State*, 353 Ark. 618, 635-36, 110 S.W.3d 272, 282-83 (2003) (holding that an affidavit stating that the officer feared that the suspect would destroy child pornography because he knew he was under investigation was sufficient to support a nighttime warrant, where the child pornography was kept in electronic form and could easily be destroyed); *Langford v. State*, 332 Ark. 54, 64, 962 S.W.2d 358, 364 (1998) (upholding a nighttime warrant based partly on a statement in the affidavit that drugs were "packaged and maintained in a manner that their destruction or removal can be easily accomplished"); *Owens v. State*, 325 Ark. 110, 117, 926 S.W.2d 650, 654 (1996) (upholding a nighttime search based in part on a statement in the affidavit that the drugs to be seized could be easily flushed down the toilet).

Using an objective standard, Sergeant Michaels was executing a search warrant issued by a district judge to whom he had submitted a sworn affidavit and sworn testimony. As a well-informed police officer, he undoubtedly was aware of the *Cummings* case, in which this court emphasized that when an accused knows he is under suspicion for possession of child pornography, the danger of imminent removal is sufficient to justify a nighttime search under Arkansas Rule of Criminal Procedure 13.2(c). 353 Ark. at 635-36, 110 S.W.3d at 283.

The majority hinges its decision on the fact that Sergeant Michaels's sworn testimony was unrecorded and, therefore, could not be considered in determining objective good faith. In 1990 and again in 1991, this court declined to look further than the affidavit in deciding whether the good-faith exception applied to

nighttime searches. *See Garner v. State,* 307 Ark. 353, 359-60, 820 S.W.2d 446, 450 (1991); *Hall,* 302 Ark. at 343-45, 789 S.W.2d at 458-59. These cases, however, were decided before this court decided *Sims v. State,* in which we said that"[a]lthough we may not look to facts outside of an affidavit to determine probable cause, when assessing good faith, we can and must look to the totality of the circumstances, including what the affiant knew, but did not include in his affidavit." 333 Ark. 405, 410, 969 S.W.2d 657, 660 (1998).

The same year as our *Sims* decision, this court specifically held that unrecorded oral testimony is to be considered when determining whether the good-faith exception applies:

> Where . . . there is a written affidavit in support of a search warrant that is later ruled deficient, this court will go beyond the four corners of the affidavit and consider unrecorded oral testimony to determine whether the officers executing the search warrant did so in objective good faith reliance on the judge's having found probable cause to issue the search warrant. Moreover, this court may also consider information known to the executing officers that may or may not have been communicated to the issuing judge.

*Moya v. State,* 335 Ark. 193, 202, 981 S.W.2d 521, 525-26 (1998). In so holding, this court applied the standard for determining good faith announced by the Eighth Circuit Court of Appeals in *U.S. v. Martin,* in which that court said that "when assessing good faith we can and must look to the totality of the circumstances including what [the affiant officer] knew but did not include in his affidavit." 833 F.2d 752, 756 (8th Cir. 1987). The Eighth Circuit was, in turn, relying on a United States Supreme Court decision, which found that "the determination whether it was objectively legally reasonable to conclude that a given search was supported by probable cause or exigent circumstances will often require examination of the information possessed by the searching officials." *Anderson v. Creighton,* 483 U.S. 635, 641 (1987).

Nor does Rule 13.1(c) of the Rules of Criminal Procedure dictate a different result. Rule 13.1(c) states that a judge hearing an application for a search warrant is to "keep a fair written summary of the proceedings and the testimony taken before him, except that if sworn testimony *alone* is offered in support of the application, such testimony shall be recorded." Ark. R. Crim. Pro. 13.1(c) (2007) (emphasis added). In the situation at hand, there was an

affidavit supporting the warrant application. Therefore, it was not only sworn testimony that was offered in support of the search warrant.

Because this court specifically held that unrecorded, oral testimony is acceptable in a good-faith analysis by this court for daytime searches in *Moya v. State, supra,* in 1998, it is illogical not to apply the same standard to nighttime searches. I would, accordingly, overrule *Garner* and *Richardson* to the extent those cases require sworn testimony before a judge at night to be recorded if it is to be considered in determining whether an officer relied in objective good faith on a defective nighttime search warrant.

To determine objective reasonableness under *Leon,* the first thing to be examined is the affidavit in support of the warrant. If the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," then the good-faith exception does not apply. *Leon,* 468 U.S. 897, 923 (1984). The affidavit in the instant case provided some basis for a nighttime search, although, admittedly, more was needed. The affidavit stated that Kelley was a fugitive from justice, had pending sex charges against children against him, was living under an assumed name, and had been arrested earlier the same evening traveling in a car with a minor who stated that Kelley had performed oral sex on him on multiple occasions. The affidavit also stated that the child traveling with Kelley told police officers that nude pictures of him were stored in Kelley's apartment in various electronic forms. The affidavit, as a final point, contained the statement that "the objects to be seized are in danger of imminent removal."

Hence, the fault of the affidavit was not that it failed to contain facts that could support a nighttime search or that it failed to allege that the objects were in danger of removal but that it failed to explicitly link the facts to the opportunity for imminent removal. While this failure is enough to make the affidavit, standing alone, insufficient, it is not so great as to "render official belief in [the existence of probable cause] entirely unreasonable." *Leon,* 468 U.S. at 923 (1984).

Having concluded that the affidavit was not so deficient as to make good-faith reliance on it unreasonable, the next issue to be examined are facts known to the affiant but not included in the affidavit. Here, the sergeant testified under oath before the district judge that Kelley had been extremely insistent that he be allowed

to call his sister, who he said would go to his apartment and pick up medication for him. Because of this, police officers were rightly concerned that his sister would remove the computer, camera, or other readily portable evidence. These facts relayed to the district judge by Sergeant Michaels, when considered in conjunction with the facts contained in the affidavit and the fact that the warrant itself purported to authorize a nighttime search, were more than sufficient to support the police's good-faith reliance on the defective nighttime warrant.

This case is readily distinguishable from the cases cited by the majority. In *Garner v. State, State v. Martinez,* and *Hall v. State,* the affidavits supporting the nighttime warrants stated only that illegal drugs were being kept at and sold from the premises. *Garner,* 307 Ark. 353, 354-55, 820 S.W.2d 446, 447-48 (1991)[1]; *Martinez,* 306 Ark. 353, 357, 811 S.W.2d 319, 321 (1991); *Hall,* 302 Ark. at 344, 789 S.W.2d at 458. Likewise, in *Fouse v. State,* the only fact listed in the affidavit was that the smell of ether was coming from the home. 337 Ark. 13, 21-22, 989 S.W.2d 146, 149-50 (1999). In *Fouse,* the only other portions of the affidavit that could be relevant in justifying a nighttime search were statements regarding the amount of time it takes to manufacture methamphetamine, the danger of explosion, and a bare conclusion that the items to be seized might be imminently removed. *Id.* Unlike the case at hand, in none of these cases did the affidavit mention the fact that the suspect knew he was under suspicion, which this court considered all important in *Cummings.* In *Richardson v. State,* which is also cited by the majority, the affidavit, like the one in the case at hand, contained conclusory language that the items to be seized were in danger of being removed or destroyed, but, unlike the case at hand, there was no indication of additional sworn statements by the police officer to supplement the affidavit. 314 Ark. 512, 518-19, 863 S.W.2d 572, 576 (1993). Finally, the case of *Davis v. State* is inapposite to the instant case because in that case no good-faith analysis was performed by this court. 369 Ark. 330, 254 S.W.3d. 729 (2006).[2]

---

[1] In *Garner,* it is also not clear that additional oral statements made to the judge were under oath.

[2] *State v. Broadway,* which is also cited by the majority, was decided before the United States Supreme Court announced the good-faith exception in *Leon* and is, therefore, inapplicable to whether the good-faith exception applies to the present case. 269 Ark. 215, 599 S.W.2d 721 (1980).

To summarize, in the case at bar: (1) there were assertions in the affidavit that supported the need for a nighttime search; (2) extrinsic facts known to the police sergeant and imparted to the issuing judge under oath supported the need for a nighttime search due to Kelley's sister and the potential for imminent destruction; and (3) the affidavit requested, and the warrant granted, permission to conduct the search at night. Taken together, these facts manifestly support the objective reasonableness of Sergeant Michaels's actions in executing the search warrant. I would not decide this case merely on the basis that the detective's sworn statements to the district judge were unrecorded, especially where, under *Moya*, we do not require this for daytime search warrants. My fear is that the majority's narrow interpretation of the law virtually eliminates the application of the good-faith exception to nighttime searches.

I would not suppress the evidence found in Kelley's apartment for the reasons set out in this opinion. For those reasons, I respectfully dissent.

GUNTER, J., joins this dissent.

JIM GUNTER, Justice, dissenting. I write separately to emphasize that the good-faith exception to the exclusionary rule is applicable to the present case and supports the circuit court's denial of Appellant's motion to suppress. Therefore, I respectfully dissent.

The Fourth Amendment to the United States Constitution declares:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

*Id.*

The Fourth Amendment does not define unreasonableness, but it is well settled that a warrantless search is presumptively unreasonable unless it falls under a narrow exception to the warrant requirement. One such exception was articulated in the landmark case of *United States v. Leon*, 468 U.S. 897 (1984), in which the United States Supreme Court stated that when an officer relies in good faith on a search warrant that is later determined to be unsupported by probable cause, any evidence

discovered by reason of that search will not be suppressed. In *Leon*, the Court announced that the good-faith exception applies when the executing officers' good-faith reliance on an invalid search warrant is objectively reasonable. *Id*. at 919. The good-faith exception cannot cure certain errors, namely: (1) when the magistrate is misled by information the affiant knew was false; (2) if the magistrate wholly abandons his detached and neutral judicial role; (3) *when the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable*; and (4) when a warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid. *Leon, 468* U.S. at 914-15 (emphasis added).

Further, in *Leon*, the Court stated that, "depending on the circumstances of the particular case, a warrant may be so facially deficient — i.e., in failing to particularize the place to be searched or the things to be seized — that the executing officers cannot reasonably presume it to be valid." *Id*. at 923. Thus, the Court reasoned, "the good-faith exception, turning as it does on objective reasonableness, should not be difficult to apply in practice. . . . In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Id*. at 924-926.

The United States Court of Appeals for the Eighth Circuit provides guidance for our understanding of the objective standard of good faith articulated by the *Leon* court in determining what a reasonable, "well-trained police officer" would have believed constitutes probable cause. In *United States v. Martin*, 833 F.2d 752 (8th Cir. 1987), the Eighth Circuit reasoned:

> Although a police officer may not rely entirely on the magistrate's finding of probable cause, in cases where, as here, the courts cannot agree on whether the affidavit is sufficient, it would be unfair to characterize the conduct of the executing officers as bad faith, particularly where there has been no material false statements or misrepresentations in the affidavit and where the officer is acting in good faith.
>
> . . . .
>
> When judges can look at the same affidavit and come to differing conclusions, a police officer's reliance on that affidavit must, therefore, be reasonable. . . .

*Id.* at 755–56.

Similar to the Fourth Amendment in the United States Constitution, article 2, § 15 of the Arkansas Constitution provides:

> The right of the people of this State to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue, except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

*Id.*

In consideration of nighttime searches, we are guided by Rule 13.2(c) of the Arkansas Rules of Criminal Procedure (2007), which provides:

> Except as hereafter provided, the search warrant shall provide that it be executed between the hours of six a.m. and eight p.m., and within a reasonable time, not to exceed sixty (60) days. Upon a finding by the issuing judicial officer of reasonable cause to believe that:
>
> (i) the place to be searched is difficult of speedy access; or
>
> (ii) the objects to be seized are in danger of imminent removal; or
>
> (iii) the warrant can only be safely or successfully executed at nighttime or under circumstances the occurrence of which is difficult to predict with accuracy; the issuing judicial officer may, by appropriate provision in the warrant, authorize its execution at any time, day or night, and within a reasonable time not to exceed sixty (60) days from the date of issuance.

*Id.* Pursuant to the rule, if any one of the exceptions is present, the issuing magistrate may, by appropriate provision in the warrant, authorize its execution at any time of day or night. *See id.*

Thus, the question in this case is whether the good-faith exception, as articulated in *Leon, supra*, should be extended to nighttime searches. In Arkansas, we have consistently held that a

factual basis supporting a nighttime search is required as a prerequisite to the issuance of a warrant authorizing a nighttime search. *Davis v. State*, 367 Ark 330, 240 S.W.3d 115 (2006); *Cummings v. State*, 353 Ark. 618, 110 S.W.3d 272 (2003); *Fouse v. State*, 337 Ark. 13, 989 S.W.2d 146 (1999).

The majority's rigid adherence to establishing, by way of an affidavit, a separate probable cause to search at night is not supported in either the U.S. or Arkansas Constitution. Here, the majority is misguided in concluding that a heightened probable-cause requirement exists for a good-faith-exception in a nighttime-search context. The majority mistakenly concludes that there should be: (1) the probable-cause determination in the affidavit for the execution of the search warrant and (2) a second probable-cause requirement for the justification of a nighttime search. In our most recent case of *Fouse v. State,* 337 Ark. 13, 989 S.W.2d 146 (1999), we established the precedent that even if we determine that a search warrant is deficient under Ark. R. Crim. P. 13.2(c) to justify a nighttime search, we shall turn to the issue of whether the police officers acted in good faith in executing the search warrant under *Leon, supra.* That same logic should apply to the present case.

Under a *Leon* analysis, there has been no allegation that judge "abandoned his detached and neutral role," nor has there been any allegation that the officers were "dishonest or reckless." *Id.* at 926. Further, on the night that Appellant was taken into custody, I would hold that the officers "harbored an objectively reasonable belief in the existence of probable cause" for the nighttime search. *Id.* The officer appeared before the judge at 2 a.m., gave the information under oath, and Appellant was in custody at the time. Based on the officer's actions, I see no unreasonableness in the officer's obtaining a warrant and in his good-faith belief that he had probable cause to search Appellant's residence.

Additionally, I would hold that the good-faith exception applies for the following reasons. First, the affidavit, which was written by Sergeant Michaels, was *not* "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon,* 468 U.S. at 914-15. Based upon M.M.'s statement, the officers knew that Appellant kept nude photographs of M.M. at his residence; that the child had seen the nude photographs on Appellant's digital camera; that the child believed those images were stored on Appellant's computer; and that the

child believed the photographs were still in Appellant's possession and stored on his computer in his room.

Second, these officers were confronted with the likelihood that this evidence of child pornography was in danger of imminent removal. At the suppression hearing, Detective Ben Skeel testified that there was "the potential for destruction of property." Further, Sergeant Michaels testified that Appellant was "very, very adamant about making phone calls" to his sister, and that "a digital camera and a computer is something that could be [grabbed]." This information was communicated by the officer to the magistrate upon the issuing of the search warrant. At the suppression hearing, the following colloquy occurred:

Q: Did you request for this to be a nighttime search?

A: Yes, ma'am, I did.

Q: Okay. First of all, were you sworn by the judge when you went with the affidavit?

A: Yes, ma'am.

Q: Okay. Were you still sworn, well, did you request a nighttime search?

A: Yes, ma'am, I did request.

Q: Okay. Did you put in that affidavit why you wanted a nighttime search?

A: The reason I had in the affidavit is that items are to be seized are in imminent, or in danger of imminent removal.

Q: Okay. Did you, was the magistrate or the judge ever given a reason for that nighttime search?

A: He, every time I go before the judge with a no not clause or, or a nighttime clause, he has me elaborate on it —

Q: Okay.

A: — on it, so, he, he did ask me as to why is it imminent, in imminent danger of removal.

Q: Okay. Were you sworn during that time?

A: Yes, ma'am.

Q: And, what did you tell him?

A: I explained to him that we were in fear that items were going to be removed from the residence because Mr. Kelley was adamant about making phone calls to contact his, I believe it was his sister, and, and his reasoning for wanting to call her was to obtain his medications. But, he was very, very adamant about making phone calls. And, due to the fact that they were talking about a digital camera and a computer is something that could easily be, you know, he could easily ask her to, hey, can you grab my computer and camera, take it out of the residence.

Q: While she was grabbing the medication?

A: While she was grabbing the medication. It's not like, it's not like it's a huge safe or anything that could be, that you need a dolly or anything to get out of there.

Q: Did, did he [the judge] sign your warrant after that?

A: Yes, ma'am.

When assessing a good-faith reliance on the magistrate's determination of probable cause, we must determine whether the officers' reliance upon the search warrant was objectively reasonable. *Fouse*, 337 Ark. at 21, 989 S.W.2d at 149 (citing *Leon, supra*). Sergeant Michaels testified that he believed that Appellant attempted to get his sister to dispose of the equipment and the images on the computer and digital camera. Given the portability of the items to be seized and the fact that the photographs could be easily deleted, Sergeant Michaels believed that the items were in danger of imminent removal and that a nighttime search was warranted. *See, e.g., U.S. v. Rugh*, 968 F.2d 750 (8th Cir. 1992) (holding that, under the totality of the circumstances, there were sufficient facts to establish the officer's objectively reasonable belief that probable cause existed to justify a nighttime search in which child pornography, including photographs and videotapes, was confiscated). Therefore, I would conclude that the circuit court properly relied

upon Sergeant Michaels's testimony that he held an objectively reasonable belief that a nighttime search of Appellant's home was justified under Rule 13.2(c)(iii). Based upon our standard of review in light of the totality of the circumstances, I would hold that the good-faith exception to the exclusionary rule is applicable to the case *sub judice* and supports the circuit court's denial of Appellant's motion to suppress.

I would affirm.

BROWN, J., joins in this dissent.